# WABASH, ST. LOUIS & PACIFIC RY. CO.
## v.
## ARNOLD SCHEVERS, Adm'r, etc.

NEGLIGENCE.—The court is of opinion that the verdict of $5,000 for the
death of defendant in error's intestate, caused as is alleged by a misplacement
of the rails, due to a defect in the switching apparatus, is sustained by the
evidence.

ERROR to the Circuit Court of  Sangamon county; the Hon.
J. J. PHILLIPS, Judge, presiding.    Opinion  filed December 4,
1885.

Messrs. GREENE, BURNETT & HUMPHREY, for  plaintiff  in
error.

Messrs. BRADLEY & BRADLEY, for defendant in error.

PLEASANTS, J.    On the 21st of January, 1833, a locomotive
engine of plaintiff in error, on which the deceased was  em-
ployed as fireman, while backing  up east  on the  main line,
jumped the track at the Neeleyville switch, and after running
upon the ties some seventy-five feet turned over into the
ditch, killing him instantly; for which his administrator
brought this suit, resulting in a verdict and judgment for
plaintiff of $5,000.

W., St. L. & P. Ry. Co. v. Schevers.

It was claimed that the accident was caused by a displacement or misplacement of the sliding rails, due to a defect in the switching apparatus, which the defendant, by using ordinary care, might have discovered and remedied.   The switch was what is called a stub switch and the particular defect complained of was in the steel pin by means of which the collar and crank attached thereto holds (and rotates) the upright shaft connected with these rails.   It passes through this shaft and the circular collar around it, at right angle with the crank.

Immediately after the accident these rails were found out of line with those of both the main and the switch tracks, about "half over" as it is described, and this pin broken in two places.   Just where these breaks occurred was not shown, but they were both within the outer surface of the collar, and so not discoverable by the eye alone.   It was therefore claimed that even if they had occurred before and been the cause of the accident, there was no proof that the defendant, by using ordinary care, might have discovered it then.   On that ground the court was asked to direct a finding for the defendant, and its refusal is the first error assigned.

According to the testimony, the breaking of this pin might allow the collar to slip on the shaft and the crank to have too much play, in which case, the shaft failing to rotate in strict correspondence with the movement of the crank, the rails would not be carried quite to their place nor firmly held where placed.   These indications at the stand might not appear, or not to the same extent, with every operation of the crank, but whenever it failed, because of a break of the pin, to move the rails as intended, it would be in this way, and it was a fair question whether they would be observed by an ordinarily attentive operator.

No other defect was discovered in this apparatus.   It was of the most approved pattern, well made, comparatively new, and at first answered its purpose perfectly ; but on several occasions shortly before the accident in question it had failed for some reason, so that it was necessary to pound the rails into place—a necessity which does not otherwise arise except in warm weather, when they are so tightened by expansion as

to prevent the operation of the crank at all in the usual way. This condition in midwinter therefore, would also serve to show that something was out of order at the switch stand.

It further appeared that one piece of the pin was not found, or not exhibited when the others were seen by the witnesses just after the accident, but one end of the middle piece, which then remained in and was punched out of the shaft, indicated by rust that the break at that point had occurred "a month or two" before.

In view of so much evidence touching the cause of the accident, the length of time it had existed and the means and opportunities for its discovery by the defendant, the court would not have been justified in taking the case from the jury.

It is next complained that certain hypothetical questions were allowed to be asked upon a subject not admitting of expert testimony, and upon the supposition that the rails were bent, which was contrary to the evidence ; but because counsel do not suggest and we are unable to see how it did or could prejudice the defendant, we give it no further consideration.

Again it is said there was some proof that the accident was attributable to the negligence of deceased's fellow servant, the engineer, as that he was running too fast and kept no lookout for the target, and that plaintiff's instruction ignored this defense.

In relation to the rate of speed we have only such inference as may be drawn from the distance run by the engine after it jumped the track, and the statement of one witness that his boy called his attention to it by the remark that it was "going awful quick;" but he did not state the fact as observed by himself, and if the boy's remark may be regarded as evidence it conveyed no definite idea of the matter referred to. The switching apparatus should have been sufficient to admit of the speed of an express passenger train, and there is nothing to warrant the inference that this engine, which was backing up for water with only a tender attached, was going any faster.

Nor does it appear that any observation of the target would

necessarily have suggested any difference in the conduct of the engineer. We understand that the target would not show whether, if in line, the sliding rails were firmly held there. It was testified that a given displacement will some times throw a car off and sometimes will not—depending, it seems, upon other circumstances. Here the tender passed the switch safely, keeping on the main track. Whether some other cause, aiding the displacement as to the locomotive, but not as to the tender, or a change in the position of the rai's produced by the momentum of the tender, if either made the difference, can not be known. But the evidence of negligence on the part of the engineer contributing to the accident, if any, was exceedingly slight. And yet we think the defendant received the full benefit of it.

If ignored by the single instruction given for the plaintiff, it was clearly submitted to the jury by the following, which was given for the defendant: "That if they believe from the evidence that the cause of the accident in question was the negligence of the engineer, Allen, in driving said engine at too rapid a rate of speed for safety or in not keeping a proper lookout, then the jury should find for the defendant, not guilty." There was no antagonism between the two. They simply presented different hypotheses of the cause of the accident: the one that of a defective switching apparatus, the other that of negligence of the engineer. The jury could not have been embarrassed by them as to the law, nor have discovered from them any supposed opinion of the court upon the facts. They must have felt not only at liberty but in duty bound to consider the defense referred to, and doubtless did consider it. We add, with reference to the instructions as a whole, that they were uncommonly few and brief, and largely for that reason, in our opinion, stated all the law that could have been helpful to the jury to know with like uncommon clearness. What has been said disposes also of the further point urged by appellant, that the verdict was contrary to the evidence.

Judgment affirmed.